**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00163-REB-KMT

MARK CHIPMAN,

    Plaintiff,

v.

ASPENBIO PHARMA, INC., a Colorado corporation,

    Defendant.

## ORDER GRANTING MOTION TO DISMISS

**Blackburn, J.**

The matters before me are (1) **Defendant's Motion and Brief To Dismiss Plaintiff Mark Chipman's First Amended Complaint** [#27],[1] filed October 7, 2011; and (2) **Defendants'** [sic] **Motion Requesting Judicial Notice in Support of AspenBio's Motion and Brief To Dismiss Plaintiff's First Amended Complaint** [#29], filed October 7, 2011. I grant both motions.

## I. JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship).

---

[1] "[#27]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" **Kansas Penn Gaming, LLC v. Collins**, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting **Conley v. Gibson**, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). Pursuant to the dictates of **Twombly**, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" **Ridge at Red Hawk, L.L.C. v. Schneider**, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting **Twombly**, 127 S.Ct. at 1974). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." **Kansas Penn Gaming**, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true. **McDonald v. Kinder-Morgan, Inc.**, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of

a cause of action" will not be sufficient to defeat a motion to dismiss. **Ashcroft v. Iqbal**, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted).  **See also Robbins v. Oklahoma**, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949.  **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965).  The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248.  Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." **Id.**

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." **Iqbal**, 129 S.Ct. at 1950; **see also Kansas Penn**

***Gaming***, 656 F.3d at 1215. Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." ***Dias v. City and County of Denver***, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting ***Twombly***, 127 S.Ct. at 1965) (internal quotation marks omitted).

In addition to these basic pleading precepts, allegations of securities fraud are subject to the more exacting requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Under the PSLRA, a complaint asserting a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),

> shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding a statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).[2] In addition, the complaint must allege scienter with more precision than is required for allegations of fraud generally, such that plaintiff "with respect to each act or omission alleged to violate this chapter, [must] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." ***Id.*** § 78u-4(b)(2). ***See also City of Philadelphia v. Fleming Companies, Inc.***, 264 F.3d 1245, 1258 (10th Cir. 2001) ("The PSLRA thus mandates a

---

[2] These heightened standards were adopted in an effort "to eliminate some of the abuses experienced in private securities litigation, such as 'the routine filing of lawsuits . . . whenever there is a significant change in an issuer's stock price,' the 'abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle,' and the 'manipulation by class action lawyers of the clients they purportedly represent.'" ***City of Philadelphia v. Fleming Companies, Inc.***, 264 F.3d 1245, 1258-59 (10th Cir. 2001) (quoting **H.R. Conf. Rep.** No. 104-369 at 31, ***reprinted in*** 41 Cong. Rec. H13692 (daily ed. Nov. 28, 1995)).

more stringent pleading standard for securities fraud actions in general, and for scienter allegations in particular.") (footnote omitted).

Moreover, certain of plaintiff's state law claims are subject to the heightened pleading requirements of Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." **FED. R. CIV. P.** 9(b). This standard requires the complaint "to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." **Koch v. Koch Industries, Inc.**, 203 F.3d 1202, 1236 (10th Cir.), **cert. denied**, 121 S.Ct. 302 (2000) (citation and internal quotation marks omitted). "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based." **Id.** (citation and internal quotation marks omitted; alteration in original).

Defendant has appended to its motion various documents referenced in the First Amended Complaint; documents filed with the SEC, the Patent and Trademark Office ("PTO"), and the courts; and publicly available press releases, conference call transcripts, and independent stock analysts' reports. It is well-settled that in resolving a motion to dismiss, the court may consider documents referenced in the complaint or that otherwise inform the basis of the plaintiff's claims. **See Prager v. LaFaver**, 180 F.3d 1185, 1189 (10th Cir.), **cert. denied**, 120 S.Ct. 405 (1999). In addition, "a court is permitted to take judicial notice of . . . facts which are a matter of public record." **Folks v. State Farm Mutual Insurance Co.**, 299 Fed. Appx 748, 756 n.12 (10th Cir. Oct. 20, 2008). Finally, for the limited purpose of showing that various disclosures were made

5

and available to investors, I may judicially notice publicly available investor communications and stock analysts' reports.  *See In re Century Aluminum Co. Securities Litigation*, 749 F.Supp.2d 964, 980 (N.D. Cal. 2010);  *Johnson v. Pozen Inc.*, 2009 WL 426235 at *2 (M.D.N.C. Feb. 19, 2009).  I thus grant the motion to take judicial notice of these documents and consider them as relevant in my analysis of the substantive motion.

### III.  FACTUAL BACKGROUND

This is an action for putative violations of the federal securities laws as well as claims under California state law.[3]  Defendant, AspenBio Pharma, Inc. ("AspenBio Pharma"), is developing a product called "AppyScore," a diagnostic test designed to detect elevated levels of a particular protein – MRP 8/14 – in blood plasma to help rule out a diagnosis of appendicitis.  (*See First Am. Compl.* ¶ 9 at 3, ¶ 32 at 15, ¶¶ 36-39 at 16-17.)  Between May 13 and June 11, 2010, at a cost of $368,329.71, plaintiff purchased 92,600 shares of AspenBio Pharma's stock.  (*Id.* ¶ 73 at 28.)  On June 7, 2010, the price of the stock fell precipitously following revelation of the disappointing results of a clinical trial involving AppyScore and declined even further after a more detailed disclosure on July 19, 2010.  (*See id*. ¶¶ 78-83 at 29-31.)  On July 29, 2010, plaintiff sold all his shares at a loss of $307,051.78.  (*Id.* ¶ 85 at 31.)

Plaintiff alleges that defendant knew, and should have disclosed to the investing public, that MRP 8/14 is present also in a "very wide spectrum of inflammatory diseases," and therefore is "useless" as a test to confirm appendicitis, unless no other

---

[3] The operative pleading is **Plaintiff Mark Chipman's First Amended Complaint** [#23], filed September 7, 2011 [hereinafter "**First Am. Compl.**"].

interfering conditions (that is, inflammatory processes that also result in elevated levels of MRP 8/14) are present. (*Id.* ¶ 39 at 17 & ¶ 42 at 18.) He relies particularly on two statements made by defendant in April 2010. The first, posted on defendant's website, stated that the company had "created and optimized a special test to detect a marker in the blood associated with appendicitis[.]" (*Id.* ¶ 58 at 24.) The second, contained in a Prospectus Supplement issued April 30, 2010, asserted that "AppyScore measures the plasma concentration of MRP 8/14 . . . an inflammation biomarker that correlates with the likelihood of having acute appendicitis." (*Id.* ¶ 61 at 25.) Plaintiff alleges that these statements, while "technically true," nonetheless were materially misleading because they gave the false impression that MRP 8/14 was differentially associated with appendicitis, that is, that it specifically screens for appendicitis, when it does not. He further maintains that the statements should have included the further clarification that AppyScore particularly was not useful to diagnose acute appendicitis, since septicemia itself produces elevated levels of MRP 8/14. (*Id.* ¶¶ 59-60 at 24-25 & ¶¶ 62-63 at 26.)

Plaintiff further alleges that defendant should have disclosed that its Vice Chairman and head of investor relations, Gregory Pusey, had been found to have filed a false affidavit in a lawsuit in a California state civil action against another company in which he was involved. (*Id.* ¶¶ 64-69 at 26-28.) Plaintiff further faults defendant for failing to tell investors that the company's founder, Roger Hurst, had told the company's CEO in 2005 that AppyScore "wouldn't work," and that an analyst hired by the company to review the results of a 2008 clinical trial, Jeffrey Magouirk, found the test to be "ineffective." (I*d.* ¶ 10 at 4, ¶ 17 at 6, & ¶ 77 at 29.)

Based on these allegations, plaintiff has asserted causes of action for violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b, as well as claims under California state law for fraud, negligent misrepresentation, and violation of the California Corporations Code.

## IV.  ANALYSIS

### A.  Federal Securities Law Claims:  Section 10(b) and Rule 10b-5

Section 10(b) makes it unlawful for any person to employ any manipulative or deceptive device, in contravention of the rules and regulations of the Securities and Exchange Commission (SEC), in connection with the purchase or sale of a security.  15 U.S.C. § 78j(b).  SEC Rule 10b-5 provides that it is unlawful for a person "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5.

As noted earlier, the PSLRA imposes "[e]xacting pleading requirements" in order for a plaintiff to maintain a viable suit for violation of section 10(b) and/or Rule 10b-5. ***Tellelabs, Inc. v. Makor Issues & Rights, Ltd.***, 551 U.S. 308, 313, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179 (2007).  To state a claim, plaintiff must allege particular and sufficient facts to suggest that defendant: (1) made an untrue statement of material fact or failed to state a material fact; (2) in connection with the purchase or sale of a security; (3) with scienter; (4) on which plaintiff relied; and (5) as a proximate result of which, plaintiff sustained damages.  *See, e.g.*, ***Anixter v. Home-Stake Products***, 77 F.3d 1215, 1225 (10th Cir. 1996).  By this motion, defendant argues that the First Amended

Complaint fails to allege facts with sufficient particularity to sustain the first, third, and fifth of these essential elements. Because as to the first element, I find that plaintiff has failed to allege adequate facts to plausibly assert a misrepresentation or omission of material fact, I do not examine the other two elements – the third and the fifth elements – challenged by this motion.

To properly allege the existence of a materially misleading statement, plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Moreover, "to fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." **Basic Inc. v. Levinson**, 485 U.S. 224, 231-32, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988) (citation and internal quotation marks omitted).

I note first that the two April 2010, statements on which plaintiff claims he relied are thin reeds indeed on which to base a securities fraud claim. Specifically, it is does not strike this court as reasonable to infer from statements that MRP 8/14 is "associated" or "correlated" with appendicitis the broader implication that it is *only* associated or correlated with that condition. **See Thomas v. New Mexico Corrections Department**, 272 Fed. Appx. 727, 729 (10th Cir., Apr. 9, 2008) (on review of motion to dismiss, court is not "bound by conclusory allegations, *unwarranted inferences*, or legal conclusions") (quoting **Hackford v. Babbitt**, 14 F.3d 1457, 1465 (10th Cir. 1994)) (emphasis added; internal quotation marks omitted). The logical leap that plaintiff asks

this court to make in inferring exclusivity from statements of mere relationship is far too broad.

In any event, it is clear that the allegedly omitted information was in fact disclosed. "When a plaintiff complains that a defendant failed to disclose a material fact necessary to make its statement not misleading, the concealed information must be information known to the defendants that is not otherwise available to the investing public." **Noble Asset Management v. Allos Therapeutics, Inc.**, 2005 WL 4161977 at*7 (D. Colo. Oct. 20, 2005). Thus, the relevant inquiry regarding materiality is not simply whether the allegedly misstated or omitted information would be considered important by a reasonable investor, but further "whether the information would still be considered important in light of other information already available to the market." **Caprin v. Simon Transportation Services**, 112 F.Supp.2d 1251, 1256 (D. Utah, 2000), **aff'd**, 99 Fed. Appx. 150 (10th Cir. Feb. 23, 2004) (citation and internal quotation marks omitted). In other words, the "[s]ecurities laws do not require disclosure of information that is readily available in the public domain." **Paskowitz v. Pacific Capital Bancorp**, 2009 WL 4911850 at *6 (C.D. Cal. Nov. 6, 2009). **See also Phillips v. LCI International, Inc.**, 190 F.3d 609, 617 (4th Cir. 1999) ("[E]ven lies are not actionable when an investor possesses information sufficient to call the [mis]representation into question.") (citation and internal quotation marks omitted).

The information plaintiff claims was concealed from him was available from several sources. First, the Prospectus Supplement, in which plaintiff claims defendant made materially misleading statements, specifically and explicitly incorporated by

reference the company's Prospectus of June 4, 2009, as well as all documents referenced therein:

> This document is in two parts. The first part is the prospectus supplement[.] . . . The second part, the accompanying prospectus, *including the documents incorporated by reference*, provides more general information. . . . *You should read this prospectus supplement, the accompanying prospectus, the documents incorporated by reference in this prospectus supplement and the accompanying prospectus . . . before investing in our securities.*

(**Decl. of Mark R.S. Foster**, Exh. 2 at S-I [#28], filed October 7, 2011 [hereinafter "**Foster Decl**."] (emphases added).) The Prospectus, in turn, specifically and explicitly incorporates by reference, *inter alia*, the company's Form 8-K, filed with the SEC on April 29, 2009. (***See id.***, Exh. 2 at 2 (also noting that "[t]he SEC allows us to 'incorporate by reference' the information in documents we file with them, which means that we can disclose important information to you by referring you to those documents").) Appended to the Prospectus was a Power Point presentation in which it was stated, under the heading "Our Science," that "MRP 8/14 plays an important role in inflammation and is elevated in appendicitis *and other diseases such as rheumatoid arthritis, Crohn's disease, and HIV*." (***Id.***, Exh. 3 at 7 (emphasis added).)

The information plaintiff claims was concealed from him, therefore, in fact was disclosed by the very document he claims was misleading. Plaintiff attempts to evade the clear implications of this revelation by eluding to the "buried facts" doctrine, pursuant to which

> a disclosure is deemed inadequate if it is presented in a way that conceals or obscures the information sought to be

> disclosed. The doctrine applies when the fact in question is hidden in a voluminous document or is disclosed in a piecemeal fashion which prevents a reasonable shareholder from realizing the correlation and overall import of the various facts interspersed throughout the document.

*Werner v. Werner*, 267 F.3d 288, 298 (3rd Cir. 2001) (citation and internal quotation marks omitted). That doctrine is inapplicable to the facts of this case. The above-referenced disclosure was not buried, but was presented as prominently, in a bullet-point and in the same typeface and font, as all other information in the Power Point presentation. A disclosure is not "buried" simply because it is included in a document properly incorporated by reference and/or situated in the middle of a multi-page document.

      Plaintiff's further suggestion that defendant concealed that AppyScore was not suited for diagnosing cases of acute appendicitis similarly is belied by the record. Defendant stated in numerous publications that AppyScore was a "rule-out" test for appendicitis (*see* **Foster Decl.**, Exh. 15 at 7; Exh. 16 at 6; Exh. 18 at 8; Exh. 19 at 16; Exh. 21 at 7; Exh. 26 at 1), a fact that the First Amended Complaint itself admits (*see* **First Am. Compl.** ¶32 at 15). Thus, AppyScore was touted for its ability to demonstrate the probable *absence* of appendicitis. In light of such statements, plaintiff cannot plausibly claim that the omission of the countervailing statement – that AppyScore was not a very strong predictor of the presence of appendicitis – was materially misleading.

      Second, in determining materiality, the "total mix" of information available includes other forms of publicly available information. **Dunn v. Ronbotics Corp.**, 2003 WL 23697826 at *6 (E.D. Va. Feb. 20, 2003). This category includes, *inter alia*,

information regarding patents issued by or pending before the PTO. *Id.* at *6-7. The First Amended Complaint frankly acknowledges that the allegedly concealed facts regarding the limitations of AppyScore's diagnostic potential were disclosed to the PTO. (*See* **First Am. Compl.** ¶¶ 44-46 at 19-20.) Plaintiff offers nothing more than his own unsubstantiated *ipse dixit* to suggest that he should not be charged with having been aware of the statements contained in these publicly available documents.

Similarly, plaintiff fails to provide any authority suggesting independent analysts' reports should not be considered part of the total mix of information available, regardless whether plaintiff himself was aware of such statements. (*See* **Foster Decl.**, Exh. 5 at 2; Exh. 29 at 6, 8; Exh. 30 at 8, Exh. 32 at 2.). Plaintiff presents neither allegations nor argument to support a conclusion that these statements were not reasonably available to him. ***See Kapps v. Torch Offshore, Inc.***, 379 F.3d 207, 216 (5th Cir. 2004) ("The 'total mix' of information normally includes information that is and has been in the readily available general public domain and facts known or reasonably available to the shareholders."). To hold otherwise would discourage the type of investor due diligence the securities laws should promote.

Plaintiff has alleged also that defendant had a duty to disclose certain internally expressed opinions regarding the viability of AppyScore, as well as the findings of another court regarding one of the company's principals in a case not involving AspenBio Pharma.[4] I disagree. "Silence, absent a duty to disclose, is not misleading

---

[4] Mr. Pusey was found to have filed a false affidavit in a case filed by investors in another company with which he was associated. (*See* **First Am. Compl.** ¶¶ 65-67 at 27.) In that case the plaintiffs lost their case following a jury trial. (*Id.* ¶ 68 at 27-28.)

under Rule 10b–5." ***Matrixx Initiatives, Inc. v. Siracusano***, – U.S. –, 131 S.Ct. 1309, 1322, 179 L.Ed.2d 398 (2011) (quoting ***Basic Inc.***, 108 S.Ct. at 987) (internal quotation marks omitted).  A company is "under no duty to disclose internal dissenting opinions" unless "existing facts . . . demonstrate[] the truth of the employees' opinions." ***Hill v. Gozani***, 651 F.3d 151, 153 (1st Cir. 2011).  Mr. Hurst's suggestion that AppyScore "didn't work" is far too vague and ambiguous to be capable of verification and thus it was not a proper subject of disclosure.  As for Mr. Magouirk's reinterpretation of the results of the first clinical trial of the test, there are no facts pleaded to suggest that his results were more than one of several reasonable interpretations of the data, as to which reasonable scientific minds could disagree.  ***See Noble Asset Management v. Allos Therapeutics, Inc.***, 2005 WL 4161977 at *11 (D. Colo., Oct. 20, 2005) ("Interpretations of scientific data are not misleading where the interpretation finds reasonable support in the data.") (citation omitted).  (***See also* Order Granting Motion To Dismiss** at 16-17 [#51], filed September 13, 2012, ***Wolfe v. AspenBio Pharma, Inc.***, Civil Case No. 11-cv-00165-REB-KMT.)

As for the litigation involving Mr. Pusey, plaintiff points to no authority that would require a company to reveal unfavorable, intermediate rulings of a court in a case that does not involve the company itself.  ***See*** 17 C.F.R. § 229.401(f)(5) (requiring disclosure of legal proceedings that may be "material to an evaluation of the ability or integrity of any director . . . or executive officer" where "[s]uch person was found by a court of competent jurisdiction in a civil action . . . to have violated any Federal or State securities law, and the judgment in such civil action . . . has not been subsequently

reversed, suspended, or vacated"). *See also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1071 (9th Cir. 2008) (company had no duty to immediately disclose government investigations).[5] In any event, the pendency of the litigation was in fact revealed in AspenBio Pharma's Amended Annual Report, filed April 28, 2010 (*see* **Foster Decl.**, Exh. 13 at 6), before plaintiff made his initial purchase of the company's stock (*see* **First Am. Compl.** ¶ 73 at 28).

I therefore find and conclude that plaintiff's First Amended Complaint fails to allege facts sufficient to plausibly suggest that defendant made false or misleading representations of material fact. The failure to adequately plead this essential element of a securities fraud claim under section 10(b) and Rule 10b-5 is fatal to plaintiff's federal claims.

### B.  California State Law Claims

Plaintiff's failure to adequately plead the element of a material misrepresentation is equally fatal to all three of his state law claims. *See McCormick v. Fund American Companies, Inc.*, 26 F.3d 869, 884 (9th Cir. 1994) (citing *Grigsby v. CMI Corp.*, 590 F.Supp. 826, 833 (N.D. Cal.1984), *aff'd*, 765 F.2d 1369 (9th Cir. 1985), and *Insurance Underwriters Clearing House v. Natomas Co.*, 228 Cal.Rptr. 449, 453–54 (1986)). In addition, a claim for negligent misrepresentation under California law cannot be

---

[5] The *Metzler Investment* court contrasted the facts of the case before it with those found to present a triable issue regarding a duty to disclose in *In re Apollo Group, Inc. Securities Litigation*, 509 F.Supp.2d 837(D. Ariz. 2007). In *Apollo Group*, the defendant had released a press statement regarding the dismissal of several lawsuits based on misconduct of its recruiters and noted specifically that the government had declined to intervene in those suits. *Id.* at 841-42. On motion for summary judgment, the court concluded that there was a disputed issue of fact as to whether that statement was misleading in light of a Department of Education preliminary report of related allegations. *Id.* at 842. *See Metzler Investment*, 540 F.3d at 1071 ("Here, unlike the complaint in Apollo, the TAC does not connect the DOE or California Attorney General investigations to any false or misleading statement[.]").

premised on an omission. *See Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 70 Cal.Rptr.3rd 199, 213 (Cal. App. 2007) ("[A] a positive assertion is required; an omission or an implied assertion or representation is not sufficient."). Accordingly, these claims also must be dismissed.

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Motion and Brief To Dismiss Plaintiff Mark Chipman's First Amended Complaint** [#27], filed October 7, 2011, is **GRANTED**;

2. That **Defendants'** [*sic*] **Motion Requesting Judicial Notice in Support of AspenBio's Motion and Brief To Dismiss Plaintiff's First Amended Complaint** [#29], filed October 7, 2011, is **GRANTED**;

3. That plaintiff's claims against defendant are **DISMISSED WITHOUT PREJUDICE** for failure to state claims on which relief may be granted; and

4. That judgment **SHALL ENTER** on behalf of defendant, AspenBioPharma, Inc., against plaintiff, Mark Chipman, as to all claims for relief and causes of action asserted in this action; provided, that the judgment shall be without prejudice.

Dated September 17, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge